UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

DAVID JOHN MOTH,

    Debtor.
_____/

Case No. 6:09-bk-10554-ABB
Chapter 7

EDGAR TYKE G. MOJICA,

    Plaintiff,

v.

DAVID JOHN MOTH,

    Defendant.
_____/

Adv. Pro. No. 6:09-ap-00924-ABB

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Complaint Objecting to Discharge of the Debtor (Doc. No. 1) filed by the Plaintiff Edgar Tyke G. Mojica against the Defendant/Debtor David John Moth seeking denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(c) and a nondischargeability determination pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(4). The final evidentiary hearing was held on October 6, 2010 at which the Debtor, Plaintiff, the parties' counsel, and Adelina M. Preibisius appeared. The parties submitted post-hearing briefs pursuant to the Court's directive.

Judgment is due to be entered in favor of the Debtor pursuant to 11 U.S.C. Section 523(a)(2)(A) for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Osceola County Project*

This proceeding stems from an investment made by the Plaintiff's mother, Adelina M. Preibisius ("Ms. Preibisius"), in a 72-unit residential townhouse development project known as Victoria Landing, a/k/a Eric Estates, in Osceola County, Florida.[1] Ms. Preibisius, a resident of California, had contact in 1992 with an investment group seeking investors to contribute capital to the project. She invested $500,000.00 in the project in 1992 with the understanding she would receive a 12% gain on her investment in approximately two and a half years through the sales of completed townhouse units.

The funds invested were from the liquidation of assets Ms. Preibisius inherited upon her husband's death. The investment terms were undocumented. Ms. Preibisius received an ownership interest in Lots 5 through 60 pursuant to the Warranty Deed executed by Dwaine Carr on October 31, 2005 and recorded in the Official Records of Osceola County, Florida on November 10, 1995 at Book 1290, Page 2600.[2]

The original developer encountered many setbacks and the project did not proceed as anticipated. Ms. Preibisius asked Plaintiff to investigate the status of her investment. He travelled to the project and conducted a physical inspection. He was not satisfied with the progress of the development. Plaintiff and Ms. Preibisius had on-going communications with the developer regarding the status of the project.

The developer engaged the Debtor and his company Sterling Windsor Homes, Inc. ("Sterling") in 1994 to provide marketing and development assistance. The Debtor has construction experience, having worked in his family's construction business in the

---

[1] Debtor's Ex. A.
[2] Debtor's Ex. F.

2

United Kingdom. The project was impeded by the inability to obtain bank financing due to the fractionalized ownership interests in the real property held by numerous individual investors. The Debtor described the project as a "patchwork quilt of investors."

The Debtor held a meeting in San Diego in 1995 to identify all of the investors and determine what ownership interests they held. Plaintiff and Ms. Preibisius attended the meeting. The Debtor created a plan to consolidate the disparate ownership interests whereby the investors would transfer their ownership interests in the various lots to Sterling in exchange for shares of stock in Sterling, with Sterling to repurchase the shares on a monthly basis for a fixed amount per share.

The Debtor, to implement the ownership consolidation plan, presented three documents to Ms. Preibisius in October 1996 (collectively, "Consolidation Documents"):

(i) Land Purchase Agreement by and between the Debtor, Ms. Preibisius, and Sterling pursuant to which Ms. Preibisius agreed to sell and Sterling agreed to purchase various lots in which Ms. Preibisius had an ownership interest in exchange for 200 shares of Sterling stock.[3] The 200 shares represented a forty-percent ownership interest in Sterling. Sterling agreed to repurchase the stock from Ms. Preibisius within two and a half years for $4,466.00 per share and to repurchase at least one share per month.

(ii) Shareholders' Agreement by and between the Debtor, Ms. Preibisius, and Sterling setting forth Ms. Preibisius owns 200 shares in Sterling and the Debtor owns 300 shares in Sterling.[4] The Shareholders' Agreement sets forth, among

---

[3] Debtor's Ex. B.
[4] Debtor's Ex. C.

other things, voting rights, stock transfer restrictions, and the stock repurchase terms as set forth in the Land Purchase Agreement.

(iii)    Warranty Deed between Ms. Preibisius and Sterling pursuant to which Ms. Preibisius transferred her ownership interest in various lots to Sterling.[5]

Ms. Preibisius reviewed the Consolidation Documents. She made one handwritten amendment to the Land Purchase Agreement by increasing the number of shares to be repurchased per month from one to three, thereby increasing the fixed monthly buy-back amount from $4,466.00 to $13,398.00. She made a similar amendment to the cover letter dated October 3, 1996 from Sterling's counsel to her, which accompanied the Consolidation Documents.[6] She executed the Consolidation Documents on October 3, 1996 and returned them to Sterling's counsel.

Ms. Preibisius was to ultimately receive $893,200.00 (200 shares x $4,466.00 per share) by May 4, 1999 pursuant to the Consolidation Documents. She received payments periodically pursuant to the Consolidation Documents, but not at the fixed monthly rate of $13,398.00 as agreed, even though the project was completed and all units were sold in 2000. The Debtor's records indicate she received total funds of $497,800.00 from 1996 through 1999; she received no payments after 1999.[7] Plaintiff disputes this amount asserting Ms. Preibisius received far less, but presented no substantiating records.

*State Court Litigation*

Ms. Preibisius executed a Limited Power of Attorney on October 30, 1999 granting Plaintiff limited and special power of attorney to take action on her behalf regarding her investment, including, instituting a collection action against Debtor and

---

[5] Debtor's Ex. D.
[6] Pl's Ex. 2.
[7] Debtor's Ex. I.

4

Sterling.[8] Plaintiff, on behalf of Ms. Preibisius, instituted a civil action in 2001 against the Debtor, Sterling, and Absolutely Florida, Inc. (a successor entity) in the Florida State Court for breach of contract, fraud, and breach of fiduciary duty.[9]

The State Court entered an Order on December 20, 2007 ("Default Order"): (i) finding the Debtor in default in failing to timely answer the Plaintiff's Fifth Amended Complaint; and (ii) awarding Plaintiff, as the limited power of attorney for Ms. Preibisius, a default judgment against the Debtor.[10] No specific findings were made by the State Court as to the substantive allegations contained in the Fifth Amended Complaint and no damages were awarded; damages were to be determined at a later date.

The Debtor's attempts to vacate the Default Order were unsuccessful and Plaintiff sought summary judgment against him. The Debtor filed a Chapter 7 bankruptcy case on July 23, 2009 and the State Court litigation pending against him was stayed pursuant to the automatic stay of 11 U.S.C. Section 362(a). No order or judgment was entered by the State Court adjudicating the substantive allegations of Plaintiff's Fifth Amended Complaint or assessing damages against the Debtor.

*Adversary Proceeding*

*Cause of Action:* Plaintiff instituted this adversary proceeding against the Debtor seeking a denial of his discharge pursuant to 11 U.S.C. Section 727 and a determination the amount of $1,187,264.80, plus interests and costs, is nondischargeable pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(4). Plaintiff did not delineate how the sum of $1,187,264.80 was calculated.

---

[8] Pl's Ex. 1.
[9] Doc. No. 1, Ex. A.
[10] Doc. No. 1, Ex. B.

Plaintiff did not prosecute the Section 727 and Section 523(a)(4) causes of action and any relief sought pursuant to Section 727 or Section 523(a)(4) is due to be denied. This proceeding is solely a Section 523(a)(2)(A) proceeding.

***Standing:*** Plaintiff filed this adversary proceeding on behalf of Ms. Preibisius pursuant to the Limited Power of Attorney. The Debtor contests Plaintiff's standing to bring this action. Plaintiff does not have standing to bring this action as a creditor of the Debtor; he did not invest any funds in the project and he is not a party to the Consolidation Documents. Plaintiff has standing to bring this action on behalf of Ms. Preibisius pursuant to the Limited Power of Attorney which grants Plaintiff broad powers to commence and prosecute any legal proceeding to recover sums owed to Ms. Preibisius and to protect her rights in any property.[11]

### *Plaintiff's Motion for Summary Judgment*

Plaintiff filed a Motion (Doc. No. 20) seeking summary judgment on his Complaint asserting the Default Order establishes the Debtor committed fraud and has collateral estoppel effect in this proceeding. The Default Order contains no findings of fact regarding the substantive allegations of Plaintiff's Fifth Amended Complaint, including any findings relating to fraud. The Default Order does not have collateral estoppel effect as to this adversary proceeding and does not establish the Debtor committed fraud. The Motion for Summary Judgment is due to be denied.

### *11 U.S.C. Section 523(a)(2)(A)*

The core of this adversary proceeding is not the $500,000.00 investment, but the execution of the Consolidation Documents. Plaintiff does not contend any misrepresentations were made or any fraud was committed in connection with Ms.

---

[11] Pl's Ex. 2.

6

Preibisius' investment of the $500,000.00. She voluntarily invested the money into the project in 1992 and made no further investments. The Debtor was not involved in the Victoria Landing project until 1994. He could not have committed any wrongdoing with respect to Ms. Preibisius' $500,000.00 investment.

Plaintiff asserts the Debtor committed fraud with respect to the execution of the Consolidation Documents by:

(i) Presenting the Consolidation Documents to Ms. Preibisius via overnight delivery on October 3, 1996 and not providing her sufficient time to review the documents.

(ii) Representing to Ms. Preibisius the documents needed to be executed quickly because "time was of the essence" and if she did not execute the documents her investment would be lost.

(iii) Representing to Ms. Preibisius the Plaintiff had been consulted and approved the Consolidation Documents.

(iv) Failing to make full payment to Ms. Preibisius pursuant to the terms of the Consolidation Documents.

Plaintiff asserts Ms. Preibisius felt pressured to quickly execute the Consolidation Documents based upon their method of delivery and the Debtor's "threats" as to the loss of her investment if she did not execute the documents. Plaintiff contends the Debtor's "time is of the essence" statement was a fraudulent misrepresentation made with the intent to induce Ms. Preibisius to quickly execute the documents. Plaintiff denies having seen the documents in their final form before Ms. Preibisius executed them.

These contentions are not credible. The evidence reflects the Consolidation Documents were the product of extensive communications and negotiations between the Debtor and Ms. Preibisius, either directly with Ms. Preibisius or through Plaintiff. Ms. Preibisius reviewed the Consolidation Documents and revised the Land Purchase

Agreement and the cover letter dated October 3, 1996. Ms. Preibisius' son Richard G. Mojica was present when she executed the Consolidation Documents; he signed the Land Purchase Agreement and the Shareholders' Agreement as a witness.

Plaintiff asserts the Debtor did not intend to fulfill the stock repurchase terms when Ms. Preibisius executed the Consolidation Documents and his breach of the repurchase agreement constitutes fraud. The substantial payments made to Ms. Preibisius from 1996 through 1999 totaling $497,800.00 establish the Debtor intended to fulfill the repurchase terms. Ms. Preibisius received nearly a full return of her $500,000.00 investment. The balance of $395,400.00 owed to her pursuant to the repurchase agreement constitutes gain on her investment. The Debtor explained the payments to Ms. Preibisius ceased in 1999 because the project had insufficient funds to make repurchase payments due to unexpected project costs. His explanation was credible given the countless problems the project encountered since its inception.

Plaintiff presented no evidence establishing the Debtor, at any time in his relationship with Ms. Preibisius, made a false representation to her with the purpose and intent to deceive her. He committed no fraud in connection with the Consolidation Documents. The failure to make full payment to Ms. Preibisius pursuant to the Consolidation Documents constitutes a contractual breach, but does not constitute fraud.

Plaintiff has not established by a preponderance of the evidence any debt or obligation owed to Ms. Preibisius by the Debtor was incurred by the Debtor through false pretenses or fraud. Any and all indebtedness owed by the Debtor to Ms. Preibisius is dischargeable and is due to be discharged. Judgment is due to be entered in favor of the Debtor and against Plaintiff and Ms. Preibisius.

*Motion for Attorneys' Fees*

The Debtor seeks an award of attorneys' fees of $23,915.00 and costs of $650.27 incurred in this proceeding (Doc. Nos. 33, 38). His fee motion is based upon Article XIII, Paragraph H of the Shareholders' Agreement and Fla. Stat. Section 57.105(7). Plaintiff objects to the Motion on the basis Paragraph H is ambiguous and must be construed against the Debtor because it was drafted by Sterling's counsel.

The first sentence of Article XIII, Paragraph H ("Sentence One") provides:

> In the event it becomes necessary for either party herein to seek legal means to enforce the terms of this Agreement, the non-prevailing party will be liable for all reasonable attorneys' fees, paralegal and law clerk fees, sales taxes, travel expenses, deposition costs, expert witness expenses and fees and any other cost of whatever nature reasonably and necessarily incurred by the prevailing party as a necessary incident to the prosecution or defense of such action, or in any post judgment or collection proceeding, including fees and costs incurred in the attempt to recover the amounts due pursuant to this paragraph, plus court costs and applicable sales or use taxes.

Debtor's Ex. C. The two sentences that follow ("Sentences Two and Three") relate to the institution of bankruptcy proceedings. They may not be construed against the Debtor as the drafting party pursuant to Article XIII, Paragraph E.[12] Sentences Two and Three are punitive in nature, are ambiguous, and are unenforceable.

Sentence One is clear and unambiguous. It is not affected by the unenforceability of Sentences Two and Three and remains a binding, enforceable contractual provision pursuant to the savings clause of Article XIII, Paragraph F. This adversary is, in part, an action to enforce the terms of the Shareholders' Agreement. The Debtor is the prevailing party in this proceeding. He is entitled to an award of reasonable attorneys' fees and

---

[12] Paragraph E provides: "This Agreement shall not be construed more strongly against any party regardless of who was more responsible for its preparation."

costs pursuant to the plain and unambiguous language of Article XIII, Paragraph H of the Shareholders' Agreement and Fla. Stat. Section 57.105(7).

The reasonable fees for the services performed by Debtor's counsel relating to this adversary proceeding is $15,000.00, which equates to approximately 54.5 hours billed at the hourly rate of $275.00. The costs of $650.27 are reasonable. Fees of $15,000.00 and costs of $650.27 are due to be awarded to the Debtor.

## CONCLUSIONS OF LAW

### *11 U.S.C. § 523(a)(2)(A)*

Plaintiff did not prosecute the Section 727 objection to discharge and Section 523(a)(4) nondischargeability causes of action contained in his Complaint. He is not entitled to any relief on these causes of action; the only cause of action presented at the trial was the Section 523(a)(2)(A) cause of action. Plaintiff has standing to bring this nondischargeability action against the Debtor pursuant to the plain and unambiguous powers granted to him by Ms. Preibisius in the Limited Power of Attorney.

The party objecting to the dischargeability of a debt pursuant to 11 U.S.C. Section 523(a) carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

Section 523(a)(2)(A) provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

10

11 U.S.C. § 523(a)(2)(A). Plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action: (1) Debtor made a false representation with the purpose and intent to deceive Plaintiff; (2) Plaintiff relied on the misrepresentation; (3) the reliance was justified; and (4) Plaintiff sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996). Plaintiff must establish each of the four common law fraud elements by a preponderance of the evidence. Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995). A determination of fraudulent intent is an issue of fact and "depends largely upon an assessment of the credibility and demeanor of the debtor . . . ." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir. 1994). Intent is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. Id.

The creditor's reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-75 (1995); In re Vann, 67 F.3d at 283-84. A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D. Fla. 2002).

### *Motion for Summary Judgment*

Plaintiff's Motion for summary judgment is due to be denied. The Default Order entered by the State Court contains no findings regarding the substantive allegations contained in Plaintiff's Fifth Amended Complaint and no damages award. The State Court did not adjudicate any of the causes of action contained in the Fifth Amended Complaint, including the fraud cause of action. The Default Order has no collateral estoppel effect in this adversary proceeding.

### *11 U.S.C. § 523(a)(2)(A) Analysis*

This dispute emanates from Ms. Preibisius' $500,000.00 investment in the Victoria Landing project. Plaintiff asserts fraud was committed with respect to the execution of the Consolidation Documents and in no other aspect of Ms. Preibisius' involvement with the project.

The Debtor made no false representations and committed no fraud in connection with the Consolidation Documents. The Consolidation Documents were the product of extensive communications and negotiations with Ms. Preibisius and Plaintiff. She did not sign them under duress or inducement, but voluntarily executed the documents in the presence of her son Richard after she had fully and carefully reviewed them.

The Debtor concedes he did not fulfill his payment obligation to Ms. Preibisius pursuant to the Consolidation Documents. Breach of a payment obligation is not the equivalent of fraud. The Debtor intended to make payments to Ms. Preibisius pursuant to the Consolidation Documents and did so for three years. The payments ceased due to the project's long-standing financial problems.

Plaintiff did not establish Debtor made any false representations with the intent to deceive Ms. Preibisius in connection with the Consolidation Documents. Plaintiff, by failing to establish the first nondischargeability element of 11 U.S.C. Section 523(a)(2)(A), failed to establish the second, third, and fourth elements. Any and all indebtedness owed by the Debtor to Ms. Preibisius is dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) and is due to be discharged pursuant to 11 U.S.C. Section 727(a).

### *Debtor's Motion for Fees*

A litigant may recover attorney's fees and costs only where such an award is provided for by statute or enforceable contract. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975). The Shareholders' Agreement, which is governed by Florida State law, and Fla. Stat. Section 57.105(7) allow for the award of reasonable attorney's fees "to the prevailing party." Section 57.105(7) of the Florida Statutes provides:

> (7) If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract. This subsection applies to any contract entered into on or after October 1, 1988.

FLA. STAT. § 57.105(7) (2003). Section 57.105(7) is applicable in dischargeability actions and "safeguards a debtor's fresh start." In re Woollacott, 211 B.R. 83, 87 (Bankr. M.D. Fla. 1997).[13]

This adversary proceeding is, in part, an action to enforce the terms of the Shareholders' Agreement. Sentence One of Article XIII, Paragraph H of the Shareholders' Agreement is a valid, binding contractual provision between the Debtor

---

[13] Florida Statute Section 57.105(7) was formerly Section 57.105(2) and was renumbered by the 2003 legislative amendments.

and Ms. Preibisius. Fla. Stat. Section 57.105(7) is applicable to this proceeding. The Debtor is entitled to an award of reasonable attorney's fees and costs pursuant to Article XIII, Paragraph H and Fla. Stat. Section 57.105(7).

The reasonableness of attorneys' fees and costs is determined through an examination of the criteria enunciated in In the Matter of First Colonial Corp. of America and Johnson v. Georgia Highway Express, Inc.[14] After consideration of the First Colonial and Johnson factors, the reasonable fees for the services performed by Debtor's counsel relating to this proceeding is $15,000.00, which equates to approximately 54.5 hours billed at the hourly rate of $275.00. The costs of $650.27 are reasonable. The Debtor is entitled to an award of fees of $15,000.00 and costs of $650.27.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Plaintiff's Motion for Summary Judgment (Doc. No. 20) is hereby **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the relief sought in Plaintiff's Complaint (Doc. No. 1) is hereby **DENIED** pursuant to 11 U.S.C. Sections 727(a), 523(a)(2)(A), and 523(a)(4); and it is further

**ORDERED, ADJUDGED and DECREED** that any indebtedness owed by the Debtor to Plaintiff and/or Ms. Preibisius is **DISCHARGEABLE** as to the Debtor

---

[14] The reasonableness of attorney's fees and costs is determined through an examination of the criteria enunciated by the Fifth Circuit Court of Appeals in In the Matter of First Colonial Corp. of Am., 544 F.2d 1291 (5th Cir. 1977) and Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. Johnson, 488 F.2d at 714.

pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(4) and is due to be discharged if an when a discharge is granted to the Debtor pursuant to Title 11 of the United States Code; and it is

**ORDERED, ADJUDGED and DECREED** that the Debtor's Motion for an award of attorneys' fees and costs (Doc. Nos. 33, 38) is hereby **GRANTED** pursuant to the Shareholders' Agreement and Fla. Stat. Section 57.105(7) and the Debtor is hereby awarded fees of $15,000.00 and costs of $650.27 against Plaintiff individually and as the limited and special power of attorney for Adelina M. Preibisius.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 13th day of January, 2011.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge